## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **GARRY BROWN and JOHN HAWKINGBERRY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 3:18-CV-00861** |
| ) | |
| **KNOXVILLE HMA HOLDINGS, LLC D/B/A TENNOVA HEALTHCARE, CLARKSVILLE HEALTH SYSTEM, G.P., PROFESSIONAL ACCOUNT SERVICES, INC.,** ) | **Judge Aleta A. Trauger** |
| ) | **Jury Demanded** |
| **Defendants.** ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Garry Brown ("Brown") and John Hawkingberry ("Hawkingberry") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Knoxville HMA Holdings, LLC d/b/a Tennova Healthcare and Clarksville Health System, G.P. (collectively "Tennova") and Professional Account Services, Inc. ("PASI"):

## INTRODUCTION

1. Tennova and PASI routinely subvert the financial interests of Tennova's patients at the Tennova Healthcare – Clarksville hospital (the "Hospital") for their own benefit and profit through unlawful, unfair, and predatory hospital lien and debt collection practices.

2. Upon information and belief, Tennova screens each patient at the Hospital and makes an initial determination regarding the reason for treatment and whether there may be a third party liable for the harm necessitating the patient's treatment (i.e. an auto accident injury).

1

3.     If the patient is identified as one whose treatment expenses may be eligible for third-party recovery, Tennova will refuse to submit that patient's medical bills to the patient's health insurance provider, even where Tennova knows the patient has valid health insurance at the time treatment is rendered and even though Tennova has a contractual obligation to bill the patient's health insurer when it provides care to an insured patient.  It is impracticable for patients to submit their medical bills directly to their health insurance, and Tennova is responsible for such submission and has the contractual obligation to do so.  Tennova has the express or implied contract with the health insurance company for a reduced compensation for treating insured patients (i.e. managed care contract) that also lays out Tennova's obligations to bill for services when and if they are rendered.

4.     Instead of submitting the patient's medical bills to the patient's health insurance provider, Tennova enlists PASI to file one or more hospital liens – purportedly done in conformance with the Hospitals' Liens Act, Tenn. Code Ann. § 29-22-101, *et seq.* – which seek to collect the full, non-negotiated charges for the treatment the patient received from Tennova while at the Hospital, even though such insured individuals have an enforceable, contractual right to a lower, negotiated rate. Further, Tennova has an enforceable and contractual obligation to seek reimbursement from the insurance carrier for services rendered.  The rates reflected in the hospital lien(s) far exceed the negotiated reimbursement rates Tennova would receive if the patient's medical bills were submitted to his or her health insurance provider and result in such patients paying more for treatment than they are contractually required to pay.

5.     Upon information and belief, Tennova employs this business model under the belief that if it "holds out" on submitting the medical bills to the patient's health insurance provider, Tennova will ultimately receive a higher reimbursement rate (thereby increasing the Hospital's

2

profit margin) when the patient attempts to recover from the third party and/or its insurance provider.

6.      Tennova and PASI pursue this course of conduct despite the fact that the patient has health insurance and is entitled to have his or her health care expenses, which were incurred at Tennova, submitted to the health insurance provider.

7.      As alleged in detail herein, Tennova and PASI have unlawfully violated the rights of Plaintiffs and the Class members.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Rule 23 of the Tennessee Rules of Civil Procedure and the Hospitals' Liens Act, Tenn. Code Ann. § 29-22-101, *et seq.*

9.      This Court has personal jurisdiction over all Defendants because they are all doing business in the State of Tennessee and Montgomery County.

10.     Venue is proper in Montgomery County because some or all of the acts giving rise to this cause of action arose or occurred in Montgomery County, Tennessee.

## PARTIES

11.     Plaintiff Garry Brown is a resident of Clarksville, Tennessee.  On September 11, 2016, following an automobile accident that same day, Plaintiff was treated at the Hospital, which is located at 651 Dunlop Lane, Clarksville, Tennessee 37040.

12.     Plaintiff John Hawkingberry is a resident of Clarksville, Tennessee.  On November 21, 2017, following an automobile accident the day before, Plaintiff was treated at the Hospital, which is located at 651 Dunlop Lane, Clarksville, Tennessee 37040.

13.     Defendant Knoxville HMA Holdings, LLC d/b/a Tennova Healthcare ("Tennova Healthcare") is a Tennessee limited liability company, which has its principal office at 4000

3

Meridian Blvd., Franklin, Tennessee 37067.  Upon information and belief, Tennova Healthcare owns and/or operates the Hospital. Tennova Healthcare's registered agent for service of process is as follows: Justin Pitt, Community Health Systems, 4000 Meridian Blvd., Franklin, Tennessee 37067.

14.     Defendant Clarksville Health System, G.P. ("Clarksville Health") is a Tennessee general partnership located at 651 Dunlop Lane, Clarksville, Tennessee 37040.  Upon information and belief, Clarksville Health also owns and/or operates the Hospital.    Clarksville Health's registered agent for service of process is as follows: Justin Pitt, Community Health Systems, 4000 Meridian Blvd., Franklin, Tennessee 37067.  Defendants Clarksville Health and Tennova Healthcare are collectively referred to as "Tennova."

15.     Defendant Professional Account Services, Inc. ("PASI") is a Tennessee corporation, which also has its principal office at 4000 Meridian Blvd., Franklin, Tennessee 37067. On the home page of its corporate website, www.collectivelydifferent.com, PASI states that it "was established in 1987 for the sole purpose of providing accounts receivable collection services" and "provides various collection services including self-pay, insurance and workers compensation collections and lien filing on liability accounts."  Additionally, Defendant PASI is, and at all times relevant to this Complaint was, registered as a "Collection Service Agency" with the Tennessee Department of Commerce and Insurance (License # 196).  PASI's registered agent for service of process is as follows: Justin Pitt, Community Health Systems, 4000 Meridian Blvd., Franklin, Tennessee 37067.

## FACTUAL BACKGROUND

### A.      Purpose And Relevant Provisions Of The Hospitals' Liens Act

4

16.     A lien is a legal claim or charge on property used as security for the payment of a debt.  The existence of a lien presupposes the existence of a debt.  When the underlying debt is extinguished, the basis for the lien is extinguished as well.

17.     Liens are classified as either possessory or non-possessory.  A possessory lien empowers a creditor to take actual possession of the debtor's property as security for the payment of the debt.  A non-possessory lien, on the other hand, enables the creditor to obtain a security interest in the debtor's property without taking possession.

18.     The non-possessory hospital liens at issue in this case were created by the Tennessee General Assembly with the 1970 enactment of the Hospitals' Liens Act ("HLA"), Tenn. Code Ann. § 29-22-101, *et seq.*

19.     As acknowledged by the Tennessee Supreme Court, the statutory lien embodied in the HLA "was enacted for the very humane purpose of encouraging physicians, hospitals, and nurses to extend their services and facilities to ***indigent persons*** who suffer personal injuries through the negligence of another, by providing the best security available to assure compensation for services and facilities."  *Shelby Cnty. Health Care Corp. v. Nationwide Ins. Co.*, 325 S.W.3d 88, 93 (Tenn. 2010) (emphasis added).  In other words, the HLA is intended to promote the availability of hospital care to indigent persons without health insurance, ***not*** to allow hospitals to refuse to honor the health insurance of a patient, injured through the negligence of a third party, and instead file a lien on the insured patient's recovery from said third party.

20.     Under clear Tennessee Supreme Court precedent, billing insured patients in excess of the negotiated reimbursement rate for health services is unlawful. *See West v. Shelby County Healthcare Corp.*, 459 S.W.3d 46 (Tenn. 2014).("[W]ith regard to an insurance company's customers, 'reasonable charges' are the charges agreed to by the insurance company and the

5

hospital.")

**B.    Tennova And PASI File Unlawful And Predatory Hospital Liens Against Plaintiffs And Class Members Resulting In Injury To Both**

21.    On or about September 11, 2016, Plaintiff Brown presented to the Hospital for emergency medical services as a result of an automobile accident.

22.    At the time of treatment, Plaintiff Brown provided his health insurance card and information to Tennova for payment of medical services.

23.    At the time of the automobile accident and when he received treatment from Tennova, Plaintiff Brown had valid health insurance coverage with TriCare, a health program for military veterans and their families. TriCare benefits available to enrollees like Plaintiff Brown can be found at 32 C.F.R. § 119.4 and upon information and belief, at all times relevant to the present case, Plaintiff Brown was entitled to the benefits as set forth to a TriCare enrollee as set forth in 32 C.F.R. Part 199.

24.    Plaintiff Brown received treatment from Tennova on or about September 11, 2016. Plaintiff Brown incurred various medical bills for the treatment he received at Tennova.  At the time of treatment, Plaintiff Brown was not aware of Tennova's systematic refusal to submit medical bills incurred for healthcare by insured patients and did not learn that information until a later date.

25.    Upon information and belief, Tennova has a contractual obligation to bill Plaintiff Brown's health insurer for the services rendered by Tennova, and Plaintiff Brown's medical bills would have been paid (and at a much lower, discounted rate) had they been submitted by Tennova to Plaintiff's health insurance for payment.

26.    Instead of submitting Plaintiff Brown's medical bills to TriCare for payment, Tennova sought collection of a purported debt by instructing PASI to file a hospital lien in the

6

amount of $2,013.07. Upon information and belief, this is a clear violation of Tennova's agreement with Mr. Brown's health insurer.

27.     The hospital lien filed by PASI on Tennova's behalf against Plaintiff Brown reflects the full, non-discounted rate for the treatment Plaintiff Brown received from Tennova, in violation of the HLA and Tennessee Supreme Court precedent.  Neither Tennova nor PASI have any statutory, contractual, or other right to collect the amount of the debt set forth in the hospital lien filed against Plaintiff Brown.

28.     Plaintiff Brown's wife and minor child were injured in the same automobile accident, and they both received emergency medical treatment at Tennova.  As with Plaintiff Brown, Tennova refused to submit the medical bills for the treatment received by Plaintiff Brown's wife and minor child to their health insurance provider, TriCare.  Instead, acting through PASI, Tennova sought collection of the purported debt owed by Plaintiff Brown's wife and minor child by filing separate hospital liens against them for the full, non-discounted rate for the services rendered.

29.     On or about November 21, 2017, Plaintiff Hawkingberry presented to the Hospital for emergency medical services as a result of an automobile accident, on November 20, where Plaintiff Hawkingberry's vehicle was struck by a drunk driver.

30.     At the time of treatment, Plaintiff Hawkingberry provided his health insurance card and information to Tennova for payment of medical services.

31.     At the time of the automobile accident and when he received treatment from Tennova, Plaintiff Hawkingberry had valid health insurance coverage with TriCare, a health program for military veterans and their families. TriCare benefits available to enrollees like Plaintiff Brown can be found at 32 C.F.R. § 119.4 and upon information and belief, at all times

7

relevant to the present case, Plaintiff Brown was entitled to the benefits owed to a TriCare enrollee as set forth in 32 C.F.R. Part 199.

32.     Plaintiff Hawkingberry received treatment from Tennova on or about November 20, 2017.  Plaintiff Hawkingberry incurred various medical bills for the treatment he received at Tennova.  At the time of treatment, Plaintiff Hawkingberry was not aware of Tennova's systematic refusal to submit medical bills incurred for healthcare by insured patients and did not learn that information until a later date.

33.     Upon information and belief, Tennova has a contractual obligation to bill Plaintiff Brown's health insurer for the services rendered by Tennova, and Plaintiff Hawkingberry's medical bills would have been paid (and at a much lower, discounted rate) had they been submitted by Tennova to Plaintiff's health insurance for payment.

34.     Instead of submitting Plaintiff Hawkingberry's medical bills to TriCare for payment, Tennova sought collection of a purported debt by instructing PASI to file a hospital lien in the amount of $11,602.75.

35.     The hospital lien filed by PASI on Tennova's behalf against Plaintiff Hawkingberry reflects the full, non-discounted rate for the treatment Plaintiff Hawkingberry received from Tennova, in violation of the HLA and Tennessee Supreme Court precedent.  Neither Tennova nor PASI have any statutory, contractual, or other right to collect the amount of the debt set forth in the hospital lien filed against Plaintiff Hawkingberry.

36.     Tennova and PASI have a pattern and practice of filing and collecting, or attempting to collect on, hospital liens for the full, non-discounted rate for medical services rendered to an insured patient where a third party could potentially be held liable, despite being informed that the patient has valid health insurance and knowing that amounts sought in the

8

hospital liens are unlawful under Tennessee law. Plaintiffs and their attorneys in the personal injury actions repeatedly informed PASI that Plaintiffs' insurance, TriCare, should be billed for all services rendered by Tennova. Nevertheless, Tennova and PASI persisted in their unlawful, unfair, and predatory hospital lien and debt collection practices.

37.     Despite the unambiguous language of the HLA and clear pronouncements from the Tennessee Supreme Court, Tennova and PASI willfully and flagrantly filed hospital liens against Plaintiffs and Class members attempting to collect amounts in excess of the contractual rates between Plaintiffs' insurance companies and Tennova whenever a third party could potentially be liable for the harm caused to Plaintiffs or Class members.

38.     Upon information and belief, Tennova has entered into a provider agreement with Tricare for the administration of benefits to TriCare enrollees that receive care at Tennova during the time relevant to the present case. Upon information and belief, Tennova has an obligation to bill TriCare for services rendered to enrollees consistent with the provider agreement. The provider agreement is accessible to TriCare but is not in the possession, custody, or control of Plaintiff Brown or Plaintiff Hawkingberry.

39.     Plaintiff Brown and Plaintiff Hawkingberry have been damaged as a result of the conduct herein alleged. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a

hospital lien that is neither valid or lawful. Had Tennova simply sought reimbursement from Plaintiff Brown and Plaintiff Hawkingberry's insurer for the services rendered, Plaintiff Brown and Plaintiff Hawkingberry would have been able to resolve their claims against third parties with less resources and time. Until and unless these hospital liens are extinguished Plaintiff Brown and Plaintiff Hawkingberry will have less money than they otherwise would have from these third-party settlements.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Rule 23 of the Tennessee Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all others similarly situated.  Plaintiffs seek certification of a proposed class defined as follows (the "Class"):

> All individuals who, from July 2014 continuing through the date of final judgment of this matter: (i) received any type of healthcare treatment from Tennova, (ii) were covered by any type of valid health insurance at the time they received the healthcare treatment from Tennova and (iii) against whom Tennova, or PASI acting on behalf of Tennova, filed a hospital lien in the State of Tennessee pursuant to the Hospitals' Liens Act, Tenn. Code Ann. § 29-22-101, *et seq*.

> Excluded from the Proposed Class are: (i) any defendant, any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any defendant's legal representatives, predecessors, successors, and assigns; (ii) the judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

41.     The Class is so numerous that joinder of all members is impracticable.  The exact number of Class members is unknown to Plaintiffs, but membership in the Class is easily ascertained through the records maintained by Tennova and PASI.  Upon information and belief,

the Class consists of hundreds, and potentially thousands, of individuals subject to Tennova and PASI's unlawful and predatory hospital lien and debt collection practices.

42. Common questions of law and fact exist and predominate over questions affecting only individual members of the Class. Such common questions of law and fact include, but are not limited to:

a. Whether Tennova and PASI's practice of filing hospital liens against insured patients at rates in excess of the contractual rates such insured patients have as a result of having health insurance, and then collecting or attempting to collect the same, is unlawful;

b. Whether Tennova and PASI engaged in a pattern of racketeering activities as alleged herein;

c. Whether Tennova employs a policy and business model of refusing to submit otherwise valid health insurance claims for insured patients injured by the negligence of a third party in order to increase Tennova's profit or for financial gain;

d. Whether PASI used false, deceptive, and misleading representations and means in connection with the collection of a debt;

e. Whether PASI used unfair means to collect or attempt to collect a debt;

f. Whether Tennova entered into express and/or implied agreements with various health insurance carriers providing, among other things, that health insurance claims should be promptly submitted to the carriers for payment;

g. Whether Plaintiffs and Class members are third party beneficiaries to any such agreements between Tennova and health insurance carriers; and

h. Whether Tennova and PASI should be enjoined from continuing the unlawful, unfair, and predatory hospital lien and debt collection practices alleged herein.

43. The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs have no claims that are antagonistic to those of the Class.

11

44.     Plaintiffs will fairly and adequately represent Class members and have retained counsel who are competent and experienced in class actions and complex litigation and have agreed to advance the expenses of this class action lawsuit.

45.     A class action is superior to other methods for the fair and effective adjudication of this controversy.  The expense and burden of individual litigation may make it difficult, if not impossible, for all members of the Class to address the wrongs done to them individually.  Some Class members may not even be aware that claims exist against Tennova and/or PASI.  There will be no unusual difficulty in the management of this action as a class action.

46.     Additionally, Tennova acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class.

### CAUSES OF ACTION

### COUNT I:

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

47.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and Class members against Tennova.

48.     Plaintiffs and Class members enjoyed a valid business relationship with their own health insurance providers by virtue of an express or implied contract that Plaintiffs and each individual Class Member had with their health insurance providers.

49.     Tennova was informed and had actual knowledge of the above described business relationship involving Plaintiffs, the Class members, and their respective health insurance providers. Tennova is aware of the terms and conditions of the contract between Tennova and the Plaintiffs and the Class Members' health insurer and are aware of their obligation to bill these

health insurers for services rendered to the carrier's insured.

50.     Specifically, Plaintiffs contracted with their health insurer to provide access to healthcare facilities in that Plaintiffs may receive health care at such facilities and the insurer, as opposed to Plaintiffs, would be responsible for the payment of the healthcare received (subject to certain deductible and co-payment requirements). These health insurance contracts between Plaintiffs and their health insurer also entitled Plaintiffs to receive care at discounted rates than Tennova would otherwise charge for individuals not covered by the health insurance contracts of Plaintiffs. Tennova intentionally and fragrantly interfered with this relationship by intentionally refusing to bill Plaintiffs' health insurer for the services rendered, despite, upon information and belief, Tennova having an affirmative contractual obligation to bill Plaintiffs' health insurer for the care received by Plaintiffs.

51.     Tennova intentionally interfered and prevented Plaintiffs and the Class from receiving the benefit of their contractual business relationship.  Tennova acted with an improper motive and/or improper means, and without any justification, in an attempt to procure additional monies that it was not entitled to in reckless disregard for the damage and harm such action would have on Plaintiffs and the Class. Tennova intentionally did not bill Plaintiffs' and the Class' health insurer for services rendered in the hopes that Tennova would be able to recover monies in excess of the rates actually owed by Plaintiffs and the Class through the contractual relationship between Plaintiffs and the Class and their health insurer and the contractual relationship between Tennova and the Plaintiffs' and the Class' health insurer.

52.     Instead of submitting the medical bills to Plaintiffs and Class members' health insurance providers, Tennova enlists PASI to file one or more hospital liens, purportedly done in conformance with the HLA, which seek to collect rates in excess of the contractual rates to which

13

Plaintiffs and Class members are entitled. The rates reflected in the hospital liens far exceed the discounted reimbursement rates Tennova would receive if the Plaintiffs and Class members' medical bills were submitted to their health insurance carriers.

53.     With respect to insured patients, filing hospital liens in excess of the contractual rates violates Tennessee law.

54.     As a result of Tennova's misconduct of intentionally interfering with Plaintiffs' and the Class members' business relationships, Plaintiffs and Class members have suffered actual damages. Plaintiff Brown and Plaintiff Hawkingberry have been damaged as a result of the conduct herein alleged. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a hospital lien that is neither valid or lawful. Had Tennova simply sought reimbursement from Plaintiff Brown and Plaintiff Hawkingberry's insurer for the services rendered, Plaintiff Brown and Plaintiff Hawkingberry would have been able to resolve their claims against third parties with less resources and time. Until and unless these hospital liens are extinguished Plaintiff Brown and Plaintiff Hawkingberry will have less money than they otherwise would have from these third-party settlements. Plaintiff Brown and Plaintiff Hawkingberry's injuries are similar to those suffered by the Class who have also either paid more money to Tennova than they were contractually obligated to pay or have suffered similar damages in the devotion of additional time and resources to resolving claims with

third-parties.

## COUNT II:

## DECLARATORY JUDGMENT
### (Tenn. Code Ann. § 29-14-101, *et seq.*)

55.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim for declaratory judgment against Tennova and PASI.

56.     Plaintiffs are both "person[s]" as that term is defined in Tenn. Code Ann. § 29-14-101.

57.     Tenn. Code Ann. § 29-14-103 provides that "[a]ny person whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder."

58.     Pursuant to Tenn. Code Ann. § 29-14-103, Plaintiffs seek a declaratory judgment that Tennova's conduct of filing hospital liens in excess of contractual rates bargained for through Plaintiffs and Class Members' insurers, where Tennova determines that a third party could potentially be held liable for the harm to the insured patient, violates the Hospitals' Liens Act, Tenn. Code Ann. § 29-22-101, *et seq.*

59.     Pursuant to Tenn. Code Ann. § 29-14-103, Plaintiffs further seek a declaratory judgment that PASI's conduct of collecting or attempting to collect hospital liens for rates in excess of the contractual rates bargained for through Plaintiffs and Class Members' insurers, violates the Hospitals' Liens Act, Tenn. Code Ann. § 29-22-101, *et seq.*

60.     Declaratory relief will provide significant guidance to Plaintiff Brown and Plaintiff Hawkingberry regarding how to handle the unlawful hospital liens they are currently subject to. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose

15

settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a hospital lien that is neither valid or lawful. Providing declaratory relief to Plaintiff Brown, Plaintiff Hawkingberry and the Class will alleviate this uncertainty and allow Plaintiff Brown, Plaintiff Hawkingberry, and the Class to finalize these settlements and obtain additional monetary relief that they would not otherwise receive while subject to the unlawful hospital liens.

## COUNT III:

## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (Tenn. Code Ann. § 47-18-101, *et seq.*)

61.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim for declaratory relief under the Tennessee Consumer Protection Act ("TCPA") against Tennova and PASI.

62.     Plaintiffs are both "person[s]" and "consumer[s]" as those terms are defined in Tenn. Code Ann. § 47-18-103(2), (13). Plaintiffs are "consumers" in that they sought services for medical care from Tennova and had Tennova been open and honest concerning their billing practices and refusal to honor their contracts with Plaintiffs' health insurer, Plaintiffs would have sought medical care and services from a different provider.

63.     Defendants Tennova and PASI are all "person[s]" as defined in Tenn. Code Ann. § 47-18-103(13).

16

64.     The healthcare services Plaintiffs received from Tennova, which form the basis of the purported debt obligation in the hospital liens filed by Tennova and PASI against Plaintiffs, are "services" as defined in Tenn. Code Ann. § 47-18-103(18).

65.     Tennova and PASI's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

66.     The TCPA broadly prohibits any unfair or deceptive acts or practices affecting the conduct of any trade or commerce.  Tenn. Code Ann. § 47-18-104(a).

67.     Pursuant to Tenn. Code Ann. § 47-18-109(b), Plaintiffs seek a declaratory judgment that Tennova's conduct of filing hospital liens in excess of contractual rates bargained for through Plaintiffs and Class Members' insurers, where Tennova determines that a third party could potentially be held liable for the harm to the insured patient, constitutes an unfair or deceptive act or practice in violation of the TCPA.

68.     Pursuant to Tenn. Code Ann. § 47-18-109(b), Plaintiffs further seek a declaratory judgment that PASI's conduct of using false, deceptive, and misleading representations and means in connection with the collection of hospital liens at issue here, constitutes an unfair or deceptive act or practice in violation of the TCPA.  In particular, Defendant PASI falsely represented to Plaintiffs that the hospital liens at issue constitute valid, lawfully owed debts.  In reality, as Defendant PASI knew or should have known, levying hospital liens against Plaintiffs (both of whom had valid health insurance) at the full, non-discounted rate for healthcare services received from Tennova violates Tennessee law.

69.     Tennova and PASI knew or should have known that their conduct violated the TCPA.

70.     Tennova and PASI's conduct proximately caused harm to Plaintiffs.  Plaintiff

Brown and Plaintiff Hawkingberry have been damaged as a result of the conduct herein alleged. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a hospital lien that is neither valid or lawful. Had Tennova simply sought reimbursement from Plaintiff Brown and Plaintiff Hawkingberry's insurer for the services rendered, Plaintiff Brown and Plaintiff Hawkingberry would have been able to resolve their claims against third parties with less resources and time. Until and unless these hospital liens are extinguished Plaintiff Brown and Plaintiff Hawkingberry will have less money than they otherwise would have from these third-party settlements.

71.    Plaintiffs seek all available declaratory, injunctive, and/or other just and proper relief and reasonable attorney's fees and costs.

## COUNT IV:

## FRAUD

72.    Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and Class members against Tennova and PASI.

73.    Acting at the direction and on behalf of Tennova, PASI filed hospital liens against Plaintiffs and Class members (all of whom had valid health insurance) at the full, non-negotiated rate for healthcare services received from Tennova.  Thereafter, PASI represented to Plaintiffs and

18

Class members that the hospital liens at issue constitute valid, lawfully owed debts. In reality, as Tennova and PASI knew or should have known, levying hospital liens against Plaintiffs and Class members at the full, non-discounted rate for healthcare services received from Tennova violates Tennessee law. Indeed, the Tennessee Supreme Court expressly held in 2014 that, with respect to insured patients, hospital liens reflecting rates for healthcare services in excess of the contractual rates to which Plaintiffs and Class Members are entitled are unlawful under the HLA.

74. Plaintiffs and Class members reasonably expected Tennova and PASI to comply with the requirements of the HLA, and, therefore, reasonably believed the amounts reflected in the hospital liens at issue to be valid, lawfully owed debts. Had the true nature of the unlawful hospital liens been disclosed to Plaintiffs and/or Class members, they would have disputed the hospital liens and not paid them.

75. Tennova and PASI knew that, by falsely representing and/or concealing the true nature of the unlawful hospital liens, they would generate higher profits.

76. Plaintiffs and Class members justifiably relied on Tennova and PASI's knowing, affirmative misrepresentations and/or active concealment. By misrepresenting and/or concealing material information about the hospital liens, Tennova and PASI intended to induce Plaintiffs and/or Class members into believing that they owed the amounts reflected in the hospital liens.

77. As a direct result of Tennova and PASI's misrepresentations and/or concealment, Plaintiffs and/or Class members have been damaged in an amount according to proof at trial.

## COUNT V:

## BREACH OF CONTRACT

78. Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein. Plaintiffs bring this claim on behalf of themselves and Class members against Tennova.

79.     Plaintiffs and Class members entered into contractual agreements with their health insurance carriers, whereby Plaintiffs and/or Class members agreed to pay monthly premiums or other compensation for the benefit of health insurance.

80.     Tennova entered into express or implied agreements with various health insurance carriers providing that Tennova would provide care and treatment to insured patients in exchange for a negotiated fee for service paid by the insurance carrier.

81.     Plaintiffs and Class members are the express and/or implied third party beneficiaries of Tennova's agreements with said health insurance carriers.

82.     Tennova breached the agreements with the health insurance carriers by intentionally refusing to submit medical bills for Plaintiffs and Class members, all of whom had valid health insurance, to their health insurance carriers for payment.

83.     Instead of submitting the medical bills to Plaintiffs and Class members' health insurance providers, Tennova enlists PASI to file one or more hospital liens, purportedly done in conformance with the HLA, which seek to collect rates in excess of the contractual rates to which Plaintiffs and Class Members are entitled for the treatment Plaintiffs and Class members received from Tennova.  The rates reflected in the hospital liens far exceed the discounted reimbursement rates Tennova would receive if the Plaintiffs and Class members' medical bills were submitted to their health insurance carriers.

84.     With respect to insured patients, hospital liens at rates for healthcare services in excess of the contractual rates bargained for through Plaintiffs and Class Members' insurer are unlawful under the HLA.  Accordingly, Tennova's hospital liens violate Tennessee law.

85.     As a direct and proximate result of Tennova's breach, Plaintiffs and Class members have suffered damages. Plaintiff Brown and Plaintiff Hawkingberry have been damaged as a result

of the conduct herein alleged. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a hospital lien that is neither valid or lawful. Had Tennova simply sought reimbursement from Plaintiff Brown and Plaintiff Hawkingberry's insurer for the services rendered, Plaintiff Brown and Plaintiff Hawkingberry would have been able to resolve their claims against third parties with less resources and time. Until and unless these hospital liens are extinguished Plaintiff Brown and Plaintiff Hawkingberry will have less money than they otherwise would have from these third-party settlements.

## COUNT VI:

## UNJUST ENRICHMENT

86.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and Class members against Tennova and PASI.

87.     Tennova and PASI were unjustly enriched through the collection of the rates for services that are in excess of the discounted rates that Plaintiffs and Class Members are entitled to.

88.     Tennova and PASI have a pattern and practice of collecting rates in excess of the contractual rates for medical services rendered to an insured patient where a third party could

potentially be held liable, despite being informed that the patient has valid health insurance and knowing that amounts sought in the hospital liens are unlawful under Tennessee law.

89.     This conduct constitutes an unjust retention of a benefit to the detriment of Plaintiffs and Class members.  It would be inequitable for Tennova and PASI to retain payment of the hospital liens at issue herein, because any such payments were received with complete disregard for available insurance coverage and contrary to the agreed upon price for services bargained for between Tennova and Plaintiffs and/or Class members' health insurance carriers.

90.     As a direct and proximate result of Tennova and PASI's conduct, Plaintiffs and Class members have suffered damages.  Plaintiffs and/or Class members seek restitution from Tennova and PASI, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Tennova and PASI from their wrongful conduct.

## COUNT VII:

## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## (18 U.S.C. § 1961, *et seq.*)

91.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and Class members against Tennova and PASI.

### The Tennova Unlawful Hospital Lien Enterprise

92.     Defendants Tennova and PASI are all persons within the meaning of 18 U.S.C. § 1961(3). They are distinct persons and separate from the Tennova Unlawful Hospital Lien Enterprise herein alleged. Tennova has a separate existence apart from the Tennova Unlawful Hospital Lien Enterprise, as defined below, in that it has an ongoing business in which it maintains

22

and operates hospitals and other healthcare facilities. Similarly, PASI has a separate existence apart from the Tennova Unlawful Hospital Lien Enterprise in that it also has an ongoing business where it seeks payment for lawfully owed debts apart from the illegal hospital liens that are the subject of the present suit.

93.     At all relevant times, in violation of 18 U.S.C. § 1962(c), Tennova and PASI conducted the affairs of an association-in-fact enterprise, as that term is defined in 18 U.S.C. § 1961(4) (the "Tennova Unlawful Hospital Lien Enterprise"). The affairs of the Tennova Unlawful Hospital Lien Enterprise affected interstate commerce through a pattern of racketeering activity.

94.     The Tennova Unlawful Hospital Lien Enterprise is an ongoing, continuing group or unit of persons and entities associated together for the common purpose of routinely, and repeatedly, filing and collecting payment of hospital liens reflecting the rates in excess of the contractual rates to which Plaintiffs and Class Members are entitled, in violation of the HLA.

95.     While the members of the Tennova Unlawful Hospital Lien Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The Tennova Unlawful Hospital Lien Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Tennova and PASI.

96.     Tennova controls and directs the affairs of the Tennova Unlawful Hospital Lien Enterprise and uses other members of the enterprise, including PASI, to carry out the scheme of collecting payment of unlawful hospital liens.

97.     By filing and collecting payment of hospital liens reflecting the rates in excess of the contractual rates to which Plaintiffs and Class Members are entitled in violation of the HLA,

23

Tennova and PASI engaged in the conduct of the Tennova Unlawful Hospital Lien Enterprise distinct from their own affairs.

**The Predicate Acts**

98.    Tennova and PASI's scheme to file and collect unlawful hospital liens, in clear violation of the HLA, was facilitated by the use of the United States mail and wire. The scheme constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), as acts of mail and wire fraud, under 18 U.S.C. §§ 1341 and 1343.

99.    Acting at the direction and on behalf of Tennova, PASI used the mail and wire in interstate commerce to falsely represent to Plaintiffs and Class members that the hospital liens at issue constitute valid, lawfully owed debts. In reality, as Tennova and PASI knew or should have known, levying hospital liens against Plaintiffs and Class members (all of whom had valid health insurance) at the full, non-discounted rate for healthcare services received from Tennova violates Tennessee law. Indeed, the Tennessee Supreme Court expressly held in 2014 that, with respect to insured patients, hospital liens at rates for healthcare services in excess of the contractual rates to which Plaintiffs and Class Members are entitled are unlawful under the HLA.

100.    Tennova and PASI also accepted payments and engaged in other correspondence in furtherance of their scheme through the mail and wire. This affects interstate activity as it involves the mail, involves banks that operate in interstate activity, and that are intended to extract payment from individuals both Tennessee and other states.

101.    The predicate acts specified herein constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) in which Tennova and PASI have engaged under 18 U.S.C. § 1962(c).

102.    All of the predicate acts of racketeering activity described herein are part of the nexus of affairs of the Tennova Unlawful Hospital Lien Enterprise.   The racketeering acts committed by the Tennova Unlawful Hospital Lien Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on Plaintiffs and Class members.  Because this case is brought on behalf of a class of similarly situated insured patients who received healthcare services from Tennova, and there were numerous acts of mail and wire fraud used to carry out the scheme to collect unlawful hospital liens filed against said insured patients, it would be impracticable for Plaintiffs to plead all of the details of the scheme with particularity.  Plaintiffs cannot plead the precise dates of Tennova and PASI's uses of the mail and wire because this information cannot be alleged without access to Tennova and PASI's records.

103.    The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

104.    As a direct and proximate result of these violations of 18 U.S.C. § 1962(c), (d), Plaintiffs and Class members have suffered substantial damages. Plaintiff Brown and Plaintiff Hawkingberry have been damaged as a result of RICO conduct herein alleged. Plaintiff Brown and Plaintiff Hawkingberry have resolved claims with third-parties whose settlement would be finalized and completed but for the existence of the unlawful hospital liens alleged herein. Plaintiff Brown and Plaintiff Hawkingberry cannot receive full payments from these settlements until and unless the hospital liens are extinguished and removed but Plaintiff Brown and Plaintiff Hawkingberry are not required to pay Tennova that amounts outlined in the hospital lien. As alleged herein, Defendants have used the mails and wires to make representations concerning the amounts that Plaintiff Brown and Plaintiff Hawkingberry allegedly owe which are false and not

consistent with the contractual obligations of Tennova. Tennova and PASI's conduct alleged herein have resulted in delayed payments, the expenditure of time, and other damages as a result of being subject to a hospital lien that is neither valid or lawful and exists solely and exclusively because of the RICO enterprise herein described. Had Tennova simply sought reimbursement from Plaintiff Brown and Plaintiff Hawkingberry's insurer for the services rendered, Plaintiff Brown and Plaintiff Hawkingberry would have been able to resolve their claims against third parties with less resources and time. Until and unless these hospital liens are extinguished Plaintiff Brown and Plaintiff Hawkingberry will have less money than they otherwise would have from these third-party settlements.

105.    Tennova and PASI are also liable to Plaintiffs and Class members for treble damages, together with all costs of this action, plus reasonable attorney's fees, as provided under 18 U.S.C. § 1964(c).

## COUNT VIII:

## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### (15 U.S.C. § 1692, *et seq.*)

106.    Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and Class members against PASI.

107.    A hospital lien under the HLA is a "debt" as that term is defined in 15 U.S.C. § 1692a(5), because it is an obligation or alleged obligation to pay money for healthcare services including hospital care, treatment and/or maintenance.

108.    Plaintiffs are "allegedly obligated to pay" a "debt" for healthcare services, and therefore are a "consumer" that term is defined in 15 U.S.C. § 1692a(3) of the Federal Fair Debt Collection Practices Act ("FDCPA").

109.     PASI is, and at all times relevant to the Complaint was, a "debt collector" as defined in 15 U.S.C. § 1692a(6), because it (1) uses instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts, and (2) regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another.  PASI is a registered "Collection Service Agency" in the State of Tennessee (License # 196).

110.     PASI has used, and continues to use, false, deceptive, and misleading representations and means in connection with the collection of hospital liens under the HLA in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).  In particular, Defendant PASI falsely represented to Plaintiffs and Class members that the hospital liens at issue constitute valid, lawfully owed debts.  In reality, as Defendant PASI knew or should have known, levying hospital liens against Plaintiffs and Class members (all of whom had valid health insurance) at rates in excess of the discounted rates to which Plaintiffs and Class Members are entitled for healthcare services received from Tennova violates Tennessee law.  Indeed, the Tennessee Supreme Court expressly held in 2014 that, with respect to insured patients, hospital liens in excess of the bargained for contractual rates is unlawful under the HLA.

111.     PASI has used, and continues to use, unfair means to collect or attempt to collect hospital liens under the HLA in violation of 15 U.S.C. §§ 1692f and 1692f(1).  The FDCPA expressly prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Here, there is no express authorization to levy hospital liens against Plaintiffs and Class members (all of whom had valid health insurance) at rates for healthcare services in excess of the contractual rates to which Plaintiff and Class Members are entitled, nor is such conduct "permitted by law."  To the contrary,

with respect to insured patients, hospital liens in excess of the bargained for contractual rates are unlawful under the HLA.

112. Throughout the pendency of the foregoing collection attempts, and in direct violation of the FDCPA, none of the liens or lien correspondences PASI directed to Plaintiffs and Class members (or their legal representatives) contained the statutorily required disclosures strictly mandated of a debt collector by the federal statutory scheme, including 15 U.S.C. § 1692g.

113. PASI's conduct is a violation of the FDCPA for which statutory damages of up to $1,000.00 per violation apply pursuant to 15 U.S.C. § 1692k(a)(2)(A).

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Tennova and PASI as follows:

1. Certifying the Class, as requested herein, appointing Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class;

2. Awarding Plaintiffs and Class members compensatory damages in an amount according to proof at trial;

3. Awarding restitution and disgorgement of Tennova and PASI's revenues or profits from the unlawful hospital liens to Plaintiffs and Class members;

4. Awarding Plaintiffs and Class members treble damages in an amount according to proof at trial;

5. Awarding declaratory and injunctive relief as permitted by law or equity, including: quashing all of Tennova's existing hospital liens filed against insured patients at the full, non-discounted rates for Tennova's healthcare services; enjoining PASI from collecting or attempting to collect Tennova's existing hospital liens filed against insured patients at the full, non-discounted

28

rates for Tennova's healthcare services; and enjoining Tennova from filing hospital liens against insured patients at the full, non-discounted rates for Tennova's healthcare services in the future;

6. Awarding interest on the monies wrongfully obtained by Tennova and PASI from the date of collection through the date of entry of judgment in this action;

7. Awarding attorney's fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

8. For such other and further relief as the Court deems just and proper.

## JURY TRIAL REQUEST

Plaintiffs request a jury for all issues that may be tried by a jury.

Dated: October 25, 2018                    Respectfully submitted,


By: *s/Benjamin A. Gastel*
Benjamin A. Gastel (BPR # 028699)
J. Gerard Stranch, IV (BPR # 023045)
BRANSTETTER, STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
beng@bsjfirm.com
gerards@bsjfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served via the Court's ECF

filing system to the following:

John R. Jacobson
William M. Outhier
Stuart A. Burkhalter
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
jjacobson@rwjplc.com
wouthier@rwjplc.com
sburkhalter@rwjplc.com

This 25th day of October, 2018.

*s/Benjamin A. Gastel*
Benjamin A. Gastel